# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

## CASE NO.

DIANA PERCIVAL,
    Plaintiff,

v.

HILLSBOROUGH COUNTY,
DEPUTY MARCOS PERERA, Individually,
DEPUTY JORDAN BRIZENDINE, Individually,
DAVID A. LEDUC, and
ALARM MONITORING & SERVICE, INC.
    Defendants,
_____/

## COMPLAINT

Plaintiff, DIANA PERCIVAL, by and through undersigned counsel, brings this civil action against Defendants DEPUTY MARCOS PERERA, DEPUTY JORDAN BRIZENDINE, HILLSBOROUGH COUNTY, DAVID LEDUC, and ALARM MONITORING & SERVICE, INC., and alleges:

## INTRODUCTION

This is a civil action for damages arising from the Defendant's illegal entry into the Plaintiff's home, which resulted in the unlawful arrest and use of excessive force against a 65-year-old elderly woman. Defendants, employees of the Hillsborough County Sheriff's Office, Deputy Marcos Perera and Deputy Jordan Brizendine, without probable cause, entered Plaintiff Diana Percival's home, detained her, and utilized unreasonable and unnecessary force against Ms. Percival, without justification and in violation of Ms. Percival's civil rights. Defendant David Leduc, individually and as an agent of Alarm Monitoring & Service, Inc., unlawfully entered Ms. Percival's home. Each Individual Defendant's unlawful acts against Ms. Percival caused her

serious and permanent injuries. The Defendants violated Ms. Percival's rights under the United States Constitution and the Florida Constitution.  Ms. Percival also brings state law tort claims against each Defendant.

## JURISDICTION

1. This action is brought pursuant to 42 U.S.C. § 1983, and the Fourth Amendment of the United States Constitution and the laws of the State of Florida.

2. The jurisdiction of this Court is predicated on 28 U.S.C § 1331 and the supplemental jurisdiction of this Court under 28 U.S.C. § 1367(a).

3. Plaintiff's claims for relief are predicated, in part, on 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and laws of the United States, and on 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions pursuant to 42 U.S.C. § 1983.

4. Venue is placed in the United States District Court for the Middle District of Florida because it is where all parties reside and where the events complained of occurred.

## PARTIES

5. Plaintiff, Diana Percival, is a citizen of the United States and resident of the State of Florida. At all times material hereto, Plaintiff was a resident of Hillsborough County, Florida. Ms. Percival sues on her behalf.

6. At all times material hereto, Defendant Hillsborough County was a county organized and existing under the laws of the State of Florida, responsible for the operation of the Hillsborough County Sheriff's Office ("HCSO") and its deputies.

7. At all times material hereto, Defendant Marcos Perera ("Perera") was an HCSO Officer employed by HCSO.

8. At all times material hereto, Defendant Jordan Brizendine ("Brizendine") was an HCSO Officer employed by HCSO.

9. All the above-named officers, (hereinafter the "Deputy Defendants"), acted as police officers within the scope of their employment and under color of law for purposes of 42 U.S.C. § 1983.

10. Defendant David Leduc ("Leduc") is a United States citizen and resident of the State of Florida.

11. Defendant Alarm Monitoring & Service, Inc. ("Alarm Company") is a Florida incorporated company owned by David Leduc.

12. All Defendants are persons under applicable law.

## FACTUAL ALLEGATIONS

13. Ms. Percival has resided at 7001 Applewood Court, Tampa, Florida 33615 ("Applewood Home") since September of 1995. On June 2, 2020, Perera met with Leduc to assist Leduc with picking up his belongings that were alleged to have been in Ms. Percival's home.

14. Leduc has never lived at Ms. Percival's residence. The two were previously involved in a dating relationship, but the two lived in separate homes.

15. Ms. Percival and Leduc were no longer dating on June 2, 2020. The two individuals experienced a breakup weeks before the incident. Leduc claimed to have left some of his belongings at Ms. Percival's home, so he summoned the HCSO to Ms. Percival's home to force his way into the home, without a court order or any legal basis.

**The invasion.**

16. On June 2, 2020, Leduc arrived at Ms. Percival's home and parked his vehicle in the driveway. Ms. Percival was home alone.

17. Shortly after, Perera arrived at the home and parked his patrol vehicle on the curb, near the sidewalk, in front of Ms. Percival's home.

18. Leduc approached the front door of the home and rang Ms. Percival's doorbell.

19. Ms. Percival opened the front door from the inside of her home.

20. Perera approached the home from the curb to speak with Ms. Percival.

21. Perera told Ms. Percival that Leduc was there to enter "his residence" to "get his stuff" from inside Ms. Percival's home.

22. According to Perera, Leduc told Perera that he lived in Ms. Percival's home. However, Leduc had never lived at Ms. Percival's home. Any statement to the contrary is untruthful.

23. From the front doorway of her home, Ms. Percival explained to Perera that Leduc did not and has never resided at the residence.

24. Ms. Percival pleaded with Perera to look at Leduc's driver's license to verify that Leduc did not live with Ms. Percival. Ms. Percival made this plea several times.

25. Perera did not look at Leduc's driver's license. Instead, Perera stated to Leduc, "You don't have to show me anything."

26. At no point in time did Perera investigate whether Leduc in fact resided at Ms. Percival's home.

27. Leduc did not and has never owned a key to Ms. Percival's residence.

28. Leduc and Perera demanded to be let into Ms. Percival's home, and they would not leave until they were allowed in.

29. Ms. Percival did not invite Perera into her residence. However, she acquiesced to Leduc's entry to try to talk to Leduc in private and defuse the situation.

30. Leduc walked into the residence, but Perera followed.

31. Once Leduc got inside the residence, he immediately began to rummage through Ms. Percival's belongings.

32. Shocked at Leduc's actions, Ms. Percival screamed at Leduc and Perera to leave her home, reiterating several times that Leduc did not live there.

33. Ms. Percival asked Perera whether he had a warrant to come inside of her residence.

34. Perera stated he did not need a warrant because he was there with Leduc to enter "his residence to get his stuff."

35. Perera stepped outside of the residence and Leduc followed.

36. Ms. Percival insisted that she did not want Leduc in her home anymore and that Perera needed to obtain a warrant before re-entering Ms. Percival's home. Ms. Percival closed her front door.

37. Leduc and Perera huddled up outside the residence and spoke with each other for a few minutes before returning to Ms. Percival's front door to attempt to enter the residence, again.

38. Leduc repeatedly attempted to force his way into the home, despite Ms. Percival's demands for Leduc to leave.

39. Ms. Percival, again, opened the front door and asked Leduc to stop.

40. As Ms. Percival tried to close the door, Leduc stood in between the doorway preventing Ms. Percival from closing the door.

41. Perera stood two feet behind Leduc and allowed Leduc to force his way into Mr. Percival's home.

42. Ms. Percival felt an immense amount of pressure, anxiety, and fear because Perera seemed to be operating at the direction of Leduc and with no regard for Ms. Percival's rights, safety, and well-being.

43. Ms. Percival closed and locked the door in fear that Leduc would successfully force his way into her home.

44. Perera and Leduc did not leave, instead they huddled up approximately 10 feet from the doorway.

45. Ms. Percival opened her door again and asked Perera and Leduc for the reason they were still at her residence.

46. Ms. Percival did not get a response.

**The arrival of Deputy Defendant Brizendine.**

47. Brizendine arrived at Ms. Percival's residence as backup to Perera, in an HCSO patrol car, armed and dressed in the standard HCSO uniform.

48. Brizendine walked to where Perera was standing, and Perera began to brief Brizendine on the situation.

49. Shortly after, Brizendine, Perera, and Leduc walked to Mr. Percival's front door.

50. Leduc, Perera, and Brizendine all stood at the front door of Ms. Percival's home and demanded that she let them inside her home.

51. Brizendine told Ms. Percival that Leduc was going to go inside to get his belongings.

52. Ms. Percival reiterated that Leduc did not live at her residence.

53. Ms. Percival asked Brizendine to check Leduc's driver's license to verify that Leduc did not reside at the residence. However, Brizendine refused to look at Leduc's driver's license.

54. At one point, Brizendine instructed Leduc to kick Ms. Percival's door in. Instead, Leduc mentioned that he had a drill which he could use to drill the lock to the front door.

55. Brizendine instructed Leduc to get the drill, and Leduc went to his truck, grabbed his drill, and returned to the front door.

56. Ms. Percival exclaimed to Brizendine "I thought you are here to serve and protect all of us and not just some of us." She expressed concern that Brizendine was an officer encouraging Leduc to destroy her property and break into her home.

57. As Leduc approached the door with the drill in one hand, Ms. Percival opened the door and pleaded with Leduc not to damage her home.

58. In fear that Leduc and the officers would force their way into the home, Ms. Percival begged Leduc and the officers to "please leave."

59. As Ms. Percival stood by the open door, Leduc forced his way into Ms. Percival's home by pushing the door wide open and quicky rushing through.

60. Perera and Brizendine immediately followed Leduc inside the home.

61. Neither of the officers had a warrant authorizing them to enter Ms. Percival's home.

62. The forceful, uninvited, and illegal entry of these three men caused Ms. Percival an instant fear for life.

63. Once Leduc and the officers gained full entry into Ms. Percival's home, she stepped back and yelled at the officers, "You see he does not have a key, now where is your warrant to legally enter and bring him into my home? Why are you are holding me hostage in my own home?"

64. Ms. Percival repeatedly asked Leduc, Perera, and Brizendine to leave her home, but they refused to listen.

65. Ms. Percival rushed towards the stairs to avoid being hurt but Brizendine blocked Ms. Percival from going up the stairs.

66. With nowhere else to go, Ms. Percival managed to run towards the downstairs staircase.

67. Leduc, Perera, and Brizendine followed Ms. Percival downstairs.

68. Brizendine quickly enclosed on Ms. Percival and kept one hand placed on his firearm the entire time.

69. Perera stood by Leduc, while Leduc began to gather some items placed on the top of Ms. Percival's desk.

70. The items included Ms. Percival's checkbook, credit cards, and bills, as well as some of Leduc's personal items.

71. Leduc began to take some of Ms. Percival's belonging and Ms. Percival yelled "please do not let him take my things!"

72. Ms. Percival reached for her checkbook to prevent Leduc from taking it.

73. As Ms. Percival grabbed her checkbook, Brizendine grabbed Ms. Percival from behind, held her arms down to her sides and pressed his chest onto her back.

74. Brizendine did not release Ms. Percival until Leduc told Brizendine that the checkbook belonged to Ms. Percival.

75. As Brizendine released Ms. Percival, Ms. Percival stated, "of course it is mine, everything in this house except for his little items that he has here and there is mine. Why is he the one that has to tell you what is mine, in my home?"

**The 911 call.**

76. After being restrained by Deputy Defendant Brizendine, Ms. Percival's fear for her safety and life increased.

77. Ms. Percival dialed 911 to get additional officers on the scene in hopes that the additional officers would protect her against the invasion and unlawful acts of Perera, Brizendine, and Leduc.

78. As the Defendants outnumbered Ms. Percival in her home, and Deputy Defendant Brizendine wrongfully restrained her, Ms. Percival became more distressed that the Defendants would continue to harm her.

79. Ms.Percival's suspicions were correct.

80. While Ms. Percival was on the phone with the 911 operator, Leduc continued to pack items into a box. Leduc walked up the stairs with a box full of items and went towards the front door of Ms. Percival's home.

81. Brizendine and Perera followed behind Leduc up the stairs.

82. Leduc exited the home through the front door, with the box full of items taken from Ms. Percival's home.

83. However, Perera and Brizendine did not leave Ms. Percival's home.

**The takedown.**

84. Perera stood inside the home by the front door. Brizendine stood at the top of the stairs and waited for Ms. Percival to walk upstairs.

85. As Ms. Percival reached the main floor of the house, Brizendine stepped into the family room.

86. Ms. Percival walked into the dining area because it was the only open space accessible to her in her home.

87. Both Perera and Brizendine stood inside Ms. Percival's home and restricted Ms. Percival to her dining room area. Perera stood by the front door and Brizendine stood in the living room area approximately four feet away from Ms. Percival.

88. Ms. Percival was in fear for her life because she was home alone with two uninvited officers, Perera and Brizendine, that forcefully entered her home without any other legal basis.

89. Once again, Ms. Percival begged Perera and Brizendine to leave her home.

90. Ms. Percival also told the officers, "As you can see, David is not coming back, evidently, he got what he came here for. Can you two please leave my home? Why are you still here when David has left my house?"

91. In response, Brizendine aggressively shouted at Ms. Percival "Shut up, ma'am!"

92.  Ms. Percival replied, "Why are you disrespecting me in my own home? All I am asking is that you please leave."

93. Again, Brizendine shouted, "Ma'am, shut up!"

94. The two deputies made a signal to each other that was obvious and apparent to Ms. Percival.

95. Ms. Percival yelled, "Oh my God, what is going on?"

96. Suddenly, Perera and Brizendine charged towards Ms. Percival.

97. Brizendine reached Ms. Percival first and used his foot to knock her right leg from under her, pushed her to the ground onto her chest, placed both of his knees on her right shoulder and applied all his bodyweight onto her.

98. Straightaway, Perera joined Brizendine and placed one foot on Ms. Percival's lower spine, applying pressure.

99. Brizendine pushed Ms. Percival so hard against the ground that the right side of Ms. Percival's forehead hit the ceramic floor.

100.   As Brizendine and Perera kept Ms. Percival on the ground, Ms. Percival frantically screamed, "You are going to kill me, please let me go! I did nothing to you! You are both in here illegally. I cannot breathe, stop it!"

101.   The more that Ms. Percival screamed in pain and begged to be released, the more pain and pressure Brizendine and Perera applied onto Ms. Percival's frame.

102.   Ms. Percival was unable to breathe while she was held down to the floor because of the massive weight both Brizendine and Perera placed on top of her.

103.   Ms. Percival felt immediate and immeasurable pain in her shoulders, neck, spine, back, chest, right hip, arm, and head.

104.   Ms. Percival screamed and yelled in panic due to the pain. Ms. Percival believes that she lost consciousness.

105.   The pain and pressure applied by Deputy Defendants caused Ms. Percival to become disoriented. She then realized that she had been placed in handcuffs.

106.   Ms. Percival asked Brizendine, "Why are you doing this to me? Don't you have a mother? How would you feel if someone treated your mother this way?"

107.   Ms. Percival believed that her arm was broken and told Brizendine "I think you broke my arm and shoulder."

108.   Eventually, Ms. Percival was transported to jail on charges of Domestic Violence Battery, Resisting an Officer Without Violence, and Misuse of Wireless 911 System.

109.     Upon using the first restroom available to her, Ms. Percival realized that she had

been bleeding from her rectum.

**Leduc returns to the home while Ms. Percival is in jail.**

110.     Some hours after Ms. Percival's arrest, Leduc returned to Ms. Percival's home

and unlawfully broke into her residence.

111.     Leduc utilized his position as an agent of Alarm Monitoring & Service, Inc. and

contacted Criticom Monitoring Services, to gain access to Ms. Percival's house, while

she was not home.

112.     Criticom Monitoring Services is company hired by Defendants, Leduc and Alarm

Company, to monitor the cameras that are installed by Leduc and the Alarm Company.

113.     Leduc, serving as an agent for Alarm Monitoring & Service, Inc., called Criticom

Monitoring Services also known as "The Central Station" and requested that Ms.

Percival's home alarm security system be disarmed.

114.     The Central Station disarmed Ms. Percival's home alarm system and without Ms.

Percival's consent Leduc entered the home without setting off the alarm.

115.     Leduc removed various personal items belonging to Ms. Percival, including but

not limited to $1,500.00.

116.     Ms. Percival contacted the HCSO to report Leduc's burglary to her home and the

HCSO advised that Ms. Percival would have to speak with Perera to report the burglary.

117.     To date, Leduc has not returned all of Ms. Percival's personal belongings and the

$1,500.00 cash money that he unlawfully took from her.

**Ms. Percival's pain and suffering.**

118.     Ms. Percival spent one night in jail. During her first appearance hearing, the first appearance judge issued a $500 bond for the resisting charge, $100 for the misuse of 911 charge, and Ms. Percival was released on her own recognizance for the battery charge.

119.     As a result of Perera and Brizendine's battery and excessive use of force against Ms. Percival, she still suffers from severe pain along the right side of her body, concentrated on her right neck, shoulder, and hip. Ms. Percival also loses feeling in her right leg if she sits for an extended period.

120.     Since the invasion of Ms. Percival's home by Leduc, Perera, and Brizendine, Ms. Percival has experienced continuous difficulties with feeling safe and sleeping in her own home.

121.     Since the invasion of Ms. Percival's home by Leduc, Perera, and Brizendine, Ms. Percival is in constant fear of another invasion and brutal physical attack by law enforcement officials.

122.     Since the invasion, Ms. Percival was able to get medical treatment from her primary doctor, and a psychotherapist, and has been placed on daily pain medication.

123.     Since the invasion, Ms. Percival was prescribed medication to treat panic and anxiety attacks.

124.     Because of this illegal arrest, Ms. Percival was placed on an unpaid three-month suspension from her employment with Bank of America. At the time, Ms. Percival's employment was based at an hourly rate of $25.00 per hour. Upon Ms. Percival's return from the suspension, she was demoted from the position she held prior to the unlawful arrest, as Account Representative.

125.     Ms. Percival was prosecuted for months before her case was nolle prossed on November 19, 2020.

## COUNT I
### VIOLATION OF CIVIL RIGHTS WHILE ACTING UNDER THE COLOR OF LAW 42 U.S.C. § 1983 AND THE FOURTH AMENDMENT FOR UNCONSTITUTIONAL ENTRY INTO HOME
#### (Against Deputy Defendants Perera and Brizendine)

126.     Plaintiff repeats and realleges the factual allegations in paragraphs 13 through 125 and incorporates them by reference herein.

127.     Deputy Defendants Perera and Brizendine unlawfully entered Plaintiff's home without a warrant or a warrant exception in violation of Plaintiff's rights under the Fourth Amendment of the U.S. Constitution, enforceable under Title 42 U.S.C. § 1983.

128.     Deputy Defendants acted jointly and in concert with one another so that the acts of one were the acts of all.

129.     As a direct and proximate cause of Deputy Defendants' wrongful acts, Ms. Percival's rights were violated and she was deprived of her Fourth Amendment right, protecting her from the illegal entry of state actors.

130.     Ms. Percival was subjected to great fear, indignity, humiliation, pain and suffering, emotional distress, physical injury, and injury in character and reputation, now and in the future.

131.     The wrongful acts of the Deputy Defendants occurred under color of law because Deputy Defendants misuse of their power, was made possible only because Deputy Defendants were clothed with the authority of state law.

WHEREFORE, Plaintiff seeks relief as further described below.

## COUNT II
### VIOLATION OF CIVIL RIGHTS WHILE ACTING UNDER THE COLOR OF LAW
### 42 U.S.C. § 1983 AND THE FOURTH AMENDMENT FOR
### FALSE IMPRISONMENT
### (Against Deputy Defendants Perera and Brizendine)

132.     Plaintiff repeats and realleges the factual allegations in paragraphs 13 through 125 and incorporates them by reference herein.

133.     Deputy Defendants Perera and Brizendine unlawfully, intentionally, and unreasonably restrained Ms. Percival to the inside of her home and deprived Ms. Percival of the right to leave, in violation of Ms. Percival's rights under the Fourth Amendment of the U.S. Constitution, enforceable under Title 42 U.S.C. § 1983.

134.     Deputy Defendants acted jointly and in concert with one another so that the acts of one were the acts of all.

135.     Ms. Percival was conscious of her confinement to the inside of her home.

136.     As a direct and proximate cause of Defendants' wrongful acts, Ms. Percival's rights were violated and she was deprived of her liberty under the Fourth Amendment as well as subjected to great fear, indignity, humiliation, pain and suffering, emotional distress, physical injury, and injury in character and reputation now and in the future.

137.     The wrongful acts of the Deputy Defendants occurred under the color of law because they misused their power possessed by virtue of state law and their acts were made possible only because Deputy Defendants were clothed with the authority of state law.

WHEREFORE, Plaintiff seeks relief as further described below.

<u>**COUNT III**</u>
**VIOLATION OF CIVIL RIGHTS WHILE ACTING UNDER THE COLOR OF LAW**
**42 U.S.C. § 1983 AND THE FOURTH AMENDMENT FOR**
**USE OF EXCESSIVE FORCE**
**(Against Deputy Defendants Perera and Brizendine)**

138.     Plaintiff repeats and realleges the factual allegations in paragraphs 13 through 125 and incorporates them by reference herein.

139.     Deputy Defendants Perera and Brizendine intentionally and aggressively grabbed Ms. Percival, swept her feet from under her, slammed her to the floor and dropped all their body weight onto Ms. Percival in violation of Plaintiff's Fourth Amendment right under U.S. Constitution, enforceable under Title 42 U.S.C. § 1983.

140.     The Deputy Defendants' actions were excessive in proportion to Ms. Percival who was not resisting and did not pose any threat to Defendants or anyone else. Moreover, any force Deputy Defendants used was excessive as there was no probable cause to arrest Ms. Percival for any criminal offense.

141.     Each Deputy Defendant acted jointly and in concert with one another so that the acts of one were the acts of all.

142.     As a direct and proximate cause of Deputy Defendants' wrongful acts, Ms. Percival's rights were violated and she was deprived of her Fourth Amendment right as well as subjected to great fear, indignity, humiliation, pain and suffering, emotional distress, injured in character and reputation, and physical injury now and in the future.

143.     The wrongful acts of Deputy Defendants occurred under the color of law because the misuse of their power was made possible only because Deputy Defendants were clothed with the authority of state law.

WHEREFORE, Plaintiff seeks relief as further described below.

## COUNT IV
## VIOLATION OF CIVIL RIGHTS WHILE ACTING UNDER THE COLOR OF LAW
## 42 U.S.C. § 1983 AND THE FOURTH AMENDMENT FOR
## FALSE ARREST
### (Against Deputy Defendants Perera and Brizendine)

144.    Plaintiff repeats and realleges the factual allegations in paragraphs 13 through 125 and incorporates them by reference herein.

145.    Each Deputy Defendant acted jointly and in concert with one another so that the acts of one were the acts of all.

146.    Deputy Defendants intentionally arrested and detained Ms. Percival without an arrest warrant and without probable cause knowing that neither existed, and thus, there was no basis for the arrest.

147.    Deputy Defendants' detention of Ms. Percival was unreasonable and unwarranted by the circumstances as Deputy Defendants knew that Ms. Percival had not committed any crimes.

148.    As a direct and proximate cause of Deputy Defendants' wrongful acts, Ms. Percival's rights were violated and she was deprived of her right to liberty under the Fourth Amendment as well as subjected to great fear, indignity, humiliation, pain and suffering, emotional distress, held up to scorn and ridicule, injured in character and reputation, and physical injury now and in the future.

149.    The wrongful acts of Deputy Defendants occurred under the color of law because the misuse of their power was made possible only because Deputy Defendants were clothed with the authority of state law.

WHEREFORE, Plaintiff seeks relief as further described below.

<u>COUNT V</u>
**VIOLATION OF CIVIL RIGHTS WHILE ACTING UNDER THE COLOR OF LAW
42 U.S.C. § 1983 AND THE FOURTH AMENDMENT FOR
ILLEGAL SEARCH OF HOME
(Against Deputy Defendants Perera and Brizendine)**

150.     Plaintiff repeats and realleges the factual allegations in paragraphs 13 through 125 and incorporates them by reference herein.

151.     Each Deputy Defendant acted jointly and in concert with one another so that the acts of one were the acts of all.

152.     Deputy Defendants conducted an illegal search of Ms. Percival's home when they crossed the threshold of Ms. Percival's home absent a warrant, consent, probable cause, or a warrant exception, in violation of Ms. Percival's rights under the Fourth Amendment of the U.S. Constitution, enforceable under Title 42 U.S.C. § 1983.

153.     As a direct and proximate cause of Defendants' wrongful acts, Ms. Percival's rights were violated and she was deprived of her Fourth Amendment rights as well as subjected to great fear, indignity, humiliation, pain and suffering, emotional distress, injured in character and reputation, and physical injury now and in the future.

154.     The wrongful acts of the Deputy Defendants occurred under the color of law, as the Deputy Defendants misuse of their power, was made possible only because the Deputy Defendants were clothed with the authority of state law.

WHEREFORE, Plaintiff seeks relief as further described below.

## COUNT VI
## VIOLATION OF CIVIL RIGHTS WHILE ACTING UNDER THE COLOR OF LAW 42
## U.S.C. § 1983 FOR
## MALICIOUS PROSECUTION
### (Against Deputy Defendants Perera and Brizendine)

155.     Plaintiff repeats and realleges the factual allegations in paragraphs 13 through 125 and incorporates them by reference herein.

156.     Each Deputy Defendant acted jointly and in concert with one another so that the acts of one were the acts of all.

157.     Deputy Defendants initiated charges against Ms. Percival who was formally charged, by information, with battery, resisting an officer without violence, and misuse of wireless 911 system.

158.     Deputy Defendants did not have probable cause to seize Ms. Percival.

159.     Deputy Defendants acted with malice, which can be inferred from their actions, including but not limited to, fabricating statements claimed to have been made by Leduc; believing Leduc's word that he lived at the home was more credible than Ms. Percival's word, a Black woman; and knowing that they had no legal basis to enter Ms. Percival's home and arrest her but deciding to do so regardless.

160.     All of the charged offenses were terminated in Ms. Percival's favor.

161.     As a direct and proximate cause of this violation of Ms. Percival's rights by Deputy Defendants, Ms. Percival was deprived of her Fourth Amendment right to be free from malicious prosecution and she was subjected to great fear, indignity, humiliation, pain and suffering, emotional distress, injured in character and reputation, and physical injury now and in the future.

162.    The wrongful acts of Defendants occurred under the color of law because Deputy Defendants misuse of their power was made possible because Deputy Defendants were clothed with the authority of state law.

WHEREFORE, Plaintiff seeks relief as further described below.

**COUNT VII**
**STATE LAW—MALICIOUS PROSECUTION**
**(Against Deputy Defendants Perera and Brizendine)**

163.    Plaintiff repeats and realleges the factual allegations in paragraphs 13 through 125 and incorporates them by reference herein.

164.    Each Deputy Defendant acted jointly and in concert with one another so that the acts of one were the acts of all.

165.    The Deputy Defendant's initiated the filing of an information against Ms. Percival for the charges of battery, resisting an officer without violence, and misuse of wireless 911 system, without probable cause and with malice.

166.    All of the charged offenses were terminated in Plaintiff's favor.

167.    Deputy Defendants acted with malice, which can be inferred from their actions, including but not limited to, fabricating statements claimed to have been made by Leduc; believing Leduc's word, that he lived at the home, was more credible than Ms. Percival's word, a Black woman; and knowing that they had no legal basis to enter Ms. Percival's home and arrest her but deciding to do so regardless.

168.    Deputy Defendants acted in bad faith, with willful and wanton conduct, and with malicious purpose when they chose to enter Ms. Percival's home, physically abuse her, and arrest Ms. Percival despite knowing they had no legal basis to do so.

169.    As a direct and proximate cause of this violation of Ms. Percival's rights by Deputy Defendants, Ms. Percival was deprived of her right to be free from malicious prosecution and she was subjected to great fear, indignity, humiliation, pain and suffering, emotional distress, injured in character and reputation, and physical injury now and in the future.

170.    The acts of each Deputy Defendants were taken within the scope of their employment with the HCSO.

WHEREFORE, Plaintiff seeks relief as further described below.

## COUNT VIII
## STATE LAW—BATTERY
### (Against Deputy Defendants Perera and Brizendine)

171.    Plaintiff repeats and realleges the factual allegations in paragraphs 13 through 125 and incorporates them by reference herein.

172.    The Deputy Defendants, acting in concert, inflicted harmful or offensive bodily contact upon Ms. Percival with the intent to cause such contact when they used excessive and unreasonable force to kick and sweep Ms. Percival to the ground, and used their bodies, feet, and knees to pin Ms. Percival against the ground.

173.    Deputy Defendants acted in bad faith, with willful and wanton conduct and with malicious purpose when they chose to enter Ms. Percival's home, physically abuse her, and arrest Ms. Percival despite knowing they had no legal basis to do so.

174.    The unlawful acts of Defendants were taken within the scope of their employment with the HCSO.

175.    As the direct and proximate cause of the Deputy Defendants' intentional, wrongful and malicious acts, Ms. Percival was subjected to great fear, indignity, humiliation, pain

and suffering, emotional distress, injured in character and reputation, and physical injury now and in the future.

### COUNT IX
### STATE LAW—BATTERY
### (Against Hillsborough County)

176.     Plaintiff repeats and realleges the factual allegations in paragraphs 13 through 125 and incorporates them by reference herein.

177.     Defendant, Hillsborough County, through its employees Perera and Brizendine, caused bodily harm to Ms. Percival by kicking her, slamming her to the ground, and pinning her to the ground with the full force and weight of their bodies on Ms. Percival's frame.

178.     Hillsborough County employees, Perera and Brizendine, were acting within the scope of their employment of Hillsborough County.

179.     Hillsborough County's acts and/or omissions allowed its employees, Perera and Brizendine, the opportunity to commit battery upon Ms. Percival.

180.     As a direct and proximate consequence of the acts of Hillsborough County through its employees, Perera and Brizendine, Ms. Percival sustained severe physical injuries, humiliation, emotional distress, pain and suffering, incurred substantial medical and other out of pocket expenses, and will continue to incur medical expenses.

WHEREFORE, Plaintiff seeks relief as further described below.

## COUNT X
## STATE LAW—TRESPASS TO LAND
**(Against Deputy Defendants Perera and Brizendine and Defendant David Leduc)**

181.    Plaintiff repeats and realleges the factual allegations in paragraphs 13 through 125 and incorporates them by reference herein.

182.    The Deputy Defendants and Defendant Leduc acted in concert when they intentionally and unlawfully entered Ms. Percival's home, absent implied or express consent.

183.    Defendant Leduc, as the business owner and agent of Defendant Alarm Monitoring & Service, Inc., disarmed Ms. Percival's alarm system and detection equipment and forced entry into Ms. Percival's home twice on June 2, 2023, the second time, while Ms. Percival was incarcerated.

184.    Ms. Percival did not invite, or consent to, Leduc entering her home on either occasion. Nor did Ms. Percival consent to the Deputy Defendants entering her home.

185.    Deputy Defendants acted in bad faith, with willful and wanton conduct, and with malicious purpose when they chose to enter Ms. Percival's home, physically abuse her, and arrest Ms. Percival despite knowing they had no legal basis to do so.

186.    The acts of each Deputy Defendants were taken within the scope of their employment with the HCSO.

187.    As a direct and proximate cause of Defendants unlawful and uninvited entry into Plaintiff's home, Plaintiff suffered harm.

WHEREFORE, Plaintiff seeks relief as further described below.

<u>COUNT XI</u>
### STATE LAW—TRESPASS TO LAND
**(Against Hillsborough County and Alarm Monitoring and Services, Inc.)**

188.    Plaintiff repeats and realleges the factual allegations in paragraphs 13 through 125 and incorporates them by reference herein.

189.    Defendants Hillsborough County and Alarm Monitoring and Services, Inc., through their employees and agents, trespassed by entering Ms. Percival's home without consent or legal authority.

190.    Ms. Percival resided at the home and did not invite Defendant Hillsborough County or Defendant Alarm Monitoring and Services' agents into her home.

191.    Hillsborough County's acts and/or omissions allowed its employees, Perera and Brizendine, the opportunity to commit the acts described above.

192.    Alarm Monitoring and Services, Inc.'s acts and/or omissions allowed its agent and owner, David Leduc, the opportunity to commit the acts described above.

193.    As a direct and proximate consequence of the acts of Hillsborough County and Alarm Monitoring and Services, Inc., through its employees and agents, Ms. Percival sustained severe physical injuries, humiliation, emotional distress, pain and suffering, incurred substantial medical and other out of pocket expenses, and will continue to incur medical expenses.

194.    Defendant Hillsborough County is vicariously liable for the acts and omissions described above by its officers, the Deputy Defendants.

195.    Defendant Alarm Monitoring & Service, Inc. is vicariously liable for the acts and omissions described above by its owner and agent, Defendant David Leduc.

WHEREFORE, Plaintiff seeks relief as further described below.

## COUNT XII
## STATE LAW—FALSE IMPRISONMENT/ARREST
### (Against Deputy Defendants Perera and Brizendine)

196.     Plaintiff repeats and realleges the factual allegations in paragraphs 13 through 125 and incorporates them by reference herein.

197.     Deputy Defendants Perera and Brizendine unlawfully, intentionally, and unreasonably restrained Ms. Percival to the inside of her home and deprived Ms. Percival of the right to leave, in violation of Florida law. Furthermore, Deputy Defendants formally arrested Ms. Percival.

198.     Deputy Defendants acted jointly and in concert with one another so that the acts of one were the acts of all.

199.     Ms. Percival was conscious of her confinement to the inside of her home.

200.     Deputy Defendants acted in bad faith, with willful and wanton conduct, and with malicious purpose when they chose to enter Ms. Percival's home, physically abuse her, and arrest Ms. Percival despite knowing they had no legal basis to do so.

201.     The acts of each Deputy Defendants were taken within the scope of their employment with the HCSO.

202.     As a direct and proximate cause of the Deputy Defendants' acts, Plaintiff suffered harm, including but not limited to, great fear, indignity, humiliation, pain and suffering, emotional distress, physical injury, and injury in character and reputation now and in the future.

WHEREFORE, Plaintiff seeks relief as further described below.

## COUNT XIII
## STATE LAW—FALSE IMPRISONMENT/ARREST
### (Against Hillsborough County)

203.    Plaintiff repeats and realleges the factual allegations in paragraphs 13 through 125 and incorporates them by reference herein.

204.    Defendant Hillsborough County, through its employees, Perera and Brizendine, subjected Ms. Percival to an unlawful detention and deprivation of liberty against her will.

205.    Specifically, Deputy Defendants Perera and Brizendine unlawfully, intentionally, and unreasonably restrained Ms. Percival to the inside of her home against her will. Deputy Defendants went a step further and formally arrested Ms. Percival.

206.    The detention was unreasonable and unwarranted by the circumstances. At the time of the arrest, Deputy Defendants knew that there was no probable cause to arrest Ms. Percival for any offense under Florida law.

207.    As a direct and proximate cause of Hillsborough County's deputies' acts, Plaintiff suffered harm, including but not limited to, great fear, indignity, humiliation, pain and suffering, emotional distress, physical injury, and injury in character and reputation now and in the future.

WHEREFORE, Plaintiff seeks relief as further described below.

## COUNT XIV
## STATE LAW—ILLEGAL SEARCH OF HOME
### (Against Deputy Defendants Perera and Brizendine)

208.    Plaintiff repeats and realleges the factual allegations in paragraphs 13 through 125 and incorporates them by reference herein.

209.    Each Deputy Defendant acted jointly and in concert with one another so that the acts of one were the acts of all.

210.     The Deputy Defendants conducted an illegal search of Ms. Percival's home when they crossed the threshold of Ms. Percival's home absent a warrant, consent, probable cause, or warrant exceptions, in violation of Plaintiff's rights under Article I, Section 12 of the Florida Constitution.

211.     Deputy Defendants acted in bad faith, with willful and wanton conduct, and with malicious purpose when they chose to enter Ms. Percival's home, physically abuse her, and arrest Ms. Percival despite knowing they had no legal basis to do so.

212.     The acts of each Deputy Defendants were taken within the scope of their employment with the HCSO.

213.     As a direct and proximate cause of this violation of Plaintiff's rights by Deputy Defendants, Plaintiff was deprived of her constitutional rights and subjected to great fear, indignity, humiliation, pain and suffering, emotional distress, injured in character and reputation, and physical injury now and in the future.

WHEREFORE, Plaintiff seeks relief as further described below.

## COUNT XV
## STATE LAW ILLEGAL SEARCH OF HOME
### (Against Hillsborough County)

214.     Plaintiff repeats and realleges the factual allegations in paragraphs 13 through 125 and incorporates them by reference herein.

215.     Defendant Hillsborough County, through its employees, Perera and Brizendine, subjected Ms. Percival to an unreasonable search when its employees crossed the threshold and entered Ms. Percival's home absent a warrant, consent, or probable cause.

216.     As a result of Defendant Hillsborough County's unlawful entry into Ms. Percival's home, Ms. Percival was deprived of her rights under Article I, Section 12 of the Florida Constitution.

217.     Hillsborough County employees Perera and Brizendine were acting within the scope of their employment with Hillsborough County.

218.     Hillsborough County's acts and/or omissions allowed its employees, Perera and Brizendine, the opportunity to illegally enter Ms. Percival's home.

219.     As a direct and proximate consequence of the acts of Hillsborough County through its employees, Perera and Brizendine, Ms. Percival sustained severe physical injuries, humiliation, emotional distress, pain and suffering, incurred substantial medical and other out of pocket expenses, and will continue to incur medical expenses.

WHEREFORE, Plaintiff seeks relief as further described below.

## COUNT XVI
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against all Deputy Defendant Perera and Brizendine and David Leduc)

220.     Plaintiff repeats and realleges the factual allegations in paragraphs 13 through 125 and incorporates them by reference herein.

221.     Each Defendant acted jointly and in concert with one another so that the acts of one were the acts of all.

222.     The conduct of the Defendants was extremely outrageous as they illegally entered Ms. Percival's home. Deputy Defendants physically abused her, and Leduc orchestrated the entire incident causing her a lifetime of pain and suffering, both mentally and physically.

223.     The Defendants' acts directly and proximately caused Ms. Percival severe emotional distress which has continued to this day. Ms. Percival has to seek therapy to work through the trauma and emotional distress caused by the Defendants.

224.     The aforesaid acts of Deputy Defendants were taken within the scope of their employment with the HCSO.

225.     Based on each Deputy Defendants' intentional, wrongful and malicious acts, Plaintiff is entitled to punitive damages against each Deputy Defendants sued in their individual capacities.

WHEREFORE, Plaintiff seeks relief as further described below.

## COUNT XVII
## CIVIL THEFT
### (Against Defendant David Leduc)

226.     Plaintiff repeats and realleges the factual allegations in paragraphs 13 through 125 and incorporates them by reference herein.

227.     At all times herein mentioned, Plaintiff was, and still is, the owner, and was and still is, entitled to immediate possession of the following personal property and its value: Cash money, $1,500.00; Central Vacuum, $1,000.00; Nail Gun, $250.00; Stack of 75-100 DVD and Blue Ray Movies, $350.00; Ladder, $150.00; Clothes and shoes (2-3 pairs), $500.00; and Drill Bit Kit and car charger, $300.00.

228.     On June 2, 2020, Plaintiff had a property value of $4,050.00.

229.     On June 2, 2020, Defendant Leduc, absent rightful possession, knowingly obtained Plaintiff's property, with the criminal intent to commit theft and deprive Plaintiff of her right and benefit to the property and appropriate the property to his own use.

230.     As a direct and proximate cause of Defendant Leduc' acts, Plaintiff suffered actual damages.

231.     On or about March 18, 2021, Plaintiff demanded, in writing, the immediate return of the above-mentioned property but Defendant failed and refused and continues to fail and refuse to return the property to Plaintiff. (A copy of Plaintiff's written demand for return of the property is attached hereto as Exhibit A and made a part hereof).

WHEREFORE, Plaintiff seeks relief as further described below.

## COUNT XVIII
### CONVERSION
### (Against Defendant David Leduc)

232.     Plaintiff repeats and realleges the factual allegations as if fully set forth and incorporates them by reference herein.

233.     At all times herein mentioned, Ms. Percival was, and still is, the owner, and was and still is, entitled to immediate possession of the following personal property and its value: Cash money, $1,500.00; Central Vacuum, $1,000.00; Nail Gun, $250.00; Stack of 75-100 DVD and Blue Ray Movies, $350.00; 65' Television damage of $2,000.00; Ladder, $150.00; Clothes and shoes (2-3 pairs), $500.00; Drill Bit Kit and car charger, $300.00; Garage Fan damage, $150.00, and Bose Mouse damage, $200.00.

234.     On June 2, 2020, Ms. Percival had a property value of $6,400.00.

235.     Defendant Leduc wrongfully asserted dominion over Ms. Percival's property, inconsistent with his ownership of that property, and converted Ms. Percival's property of its value of $6,400.00, when he obtained and removed the property from Plaintiff's home without her knowledge or consent.

236.     Ms. Percival has demanded the return of the funds and property.

237.     Defendant Leduc has refused to return what he improperly obtained.

238.     As a direct and proximate cause of Defendant Leduc' acts, Plaintiff suffered actual

damages.

WHEREFORE, Plaintiff seeks relief as further described below.

## REQUEST FOR RELIEF

WHEREFORE, the Plaintiff respectfully seeks judgment as follows:

A.  That the Court assume jurisdiction over this action;

B.  Declare that the acts and omissions described herein violated Plaintiff's rights under the Constitution and Laws of the United States and State of Florida;

C.  Actual damages in the amount of $4,050.00.

D.  Compensatory damages against each of the defendants herein;

E.  Punitive damages under federal and state law;

F.  Treble damages as provided by statute;

G.  Attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

H.  Prejudgment interest; and

I.  Such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

/s/ Jeremy McLymont, Esq.
AsiliA Law Firm, P.A.
33 SW 2nd Ave. Ste. 1104
Miami, FL 33130
Tel. (786) 420.3014
Fax (813) 549.2896
Jeremy@asilialaw.com
Florida Bar No.1010776
Attorney for Plaintiff