UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DIANA PERCIVAL,

    Plaintiff,

v.                                                          Case No: 8:23-cv-01243-KKM-JSS

SHERIFF CHAD CHRONISTER,
in his official capacity,
DEPUTY MARCOS PERERA,
in his individual capacity,
DEPUTY JORDAN BRIZENDINE,
in his individual capacity,
DAVID LEDUC, and
ALARM MONITORING & SERVICE, Inc.,

    Defendants.
_____

## ORDER

Diana Percival sued Sheriff Chad Chronister, two of Chronister's deputies, David Leduc, and Alarm Monitoring & Service, Inc., alleging a host of state law torts and federal statutory violations. *See* 2d Am. Compl. (Doc. 78). After several false starts, Percival served Leduc and Alarm Monitoring with summons and copies of both the initial and amended complaints. *See* (Docs. 16, 18, 24, 28, 29, 31); *see also* (Doc. 62) (Percival's supplemental

brief concerning service of process).[1] When neither Party answered the complaint, Percival moved for and received entries of Clerk's default as to Leduc and Alarm Monitoring. *See* (Docs. 43–45). She then timely moved for default judgment. (Doc. 48). The Magistrate Judge considered the motion, held an evidentiary hearing, and issued a report and recommendation that recommended the motion be granted-in-part and denied-in-part. (Docs. 59, 66). Percival objected to the report and recommendation, and those objections are now ripe. (Doc. 71).

A few days after Percival filed her objections, Leduc and Alarm Monitoring appeared in the case for the first time and moved to set aside the entries of default, which would moot the motion for default judgment and Percival's objections. Mot. to Vacate (Doc. 73). Leduc and Alarm Monitoring argue that there is good cause to set aside the entries of default because Leduc's failure to respond to the complaint was not willful under the circumstances, both have meritorious defenses to Percival's claims, and Percival will not be prejudiced. *See id.* at 6–11. Percival opposes, arguing that Leduc willfully failed to respond, that she would be prejudiced by having to litigate the case on its merits and undergo another round of discovery, and that I should exercise my discretion to deny Leduc's motion at least as to some counts. *See* Resp. (Doc. 79) at 3–6.[2]

---

[1] Alarm Monitoring is Leduc's company, *see* (Doc. 73) at 3–4, and documents intended for Alarm Monitoring were served on Leduc as owner and then mailed to Leduc's address, *see* (Docs. 16, 28, 31).

[2] I ordered Percival to respond to Leduc and Alarm Monitoring's motion "no later than March 28, 2024." *See* (Doc. 77). Percival filed her response on March 29, 2024. *See* Resp. at 6.

2

Federal Rule of Civil Procedure 55 provides that "[t]he court may set aside an entry of default for good cause." FED. R. CIV. P. 55(c). "Good cause is a mutable standard, varying from situation to situation. It is also a liberal one—but not so elastic as to be devoid of substance." *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996) (quotations omitted); *see also Savoia-McHugh v. Glass*, 95 F.4th 1337, 1342 (11th Cir. 2024) (applying *Compania*). Although the good cause standard "is not susceptible to a precise formula, . . . some general guidelines are commonly applied." *Compania*, 88 F.3d at 951. To start, "[c]ourts have considered whether the default was culpable or willful, whether setting it aside would prejudice the adversary, and whether the defaulting party presents a meritorious defense." *Id.* They have also "examined other factors including whether the public interest was implicated, whether there was significant financial loss to the defaulting party, and whether the defaulting party acted promptly to correct the default." *Id.* No one set of factors is "talismanic." *Id.* "[But] if a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief." *Id.* at 951–52. After consideration of these factors in the light of the factual record, I conclude that there is good cause to set aside the entries of default.

First, I find that Leduc did not willfully fail to respond under the circumstances. Leduc's affidavit states that, after receiving service and noting that several government

3

employees including the Sheriff were named alongside him, he went to the Sheriff's Office and spoke to counsel for the Sheriff's Office Defendants about the case. Leduc Aff. (Doc. 73-1) ¶¶ 2–5. Leduc explained his principal defense, that he had lived in "Percival's home for almost [two] years," *id.* ¶ 5, and left with the impression that he was not "an actual [d]efendant" and that the Sheriff's Office was going to try and get the case dismissed, *id.* ¶¶ 6–7. Leduc did not hear anything else about the case (and thus thought the matter disposed of) until he received a copy of the report and recommendation in the mail. *Id.* ¶¶ 8–9. After Leduc realized that the case had not, in fact, been dismissed and that he and his company were indeed defendants, he retained counsel and filed a motion to set aside the entries of default, complete with a proposed answer. *Id.* ¶¶ 10–11 (explaining that Leduc retained counsel on March 18, 2024); Mot. to Vacate at 12 (filed on March 19, 2024). This description of the events, which I credit, is a far cry from optimal litigation practice. But it does not rise to the level of "intentional or reckless disregard for the judicial proceedings." *See Compania*, 88 F.3d at 951–52.

Percival's arguments, that Leduc once pointed a firearm at a process server in a different case (before holstering the firearm and accepting service once the server identified himself) and is otherwise no stranger to state legal proceedings, do not refute the above account. *See* Resp. at 3–4; (Doc. 79-1) at 1. More concerning is the affidavit of Jamar Thompson, a legal assistant at Percival's counsel's firm. *See* Thompson Aff. (Doc. 79-2).

Thompson states that Leduc called the firm on July 28, 2023, (while Percival was still attempting to get Leduc and Alarm Monitoring properly served with the amended complaint) and asked to speak with counsel regarding the lawsuit. *Id.* ¶¶ 1–13. I have no reason to disbelieve Thompson's sworn statement, which indicates Leduc was aware of the suit and that it concerned him enough to seek information from Percival's counsel early on. That said, the facts contained in Thompson's statement are still broadly reconcilable with Leduc's version of events. Percival does not claim that her counsel ever spoke to Leduc following the call, despite Thompson assuring Leduc that counsel would "give him a call back at his earliest convenience." *See id.* ¶ 6. Being confused by a federal lawsuit in which you are named alongside many official actors, speaking to counsel for other defendants after you are unable to reach opposing counsel, and then neglecting to follow up with the case borders on negligent or unwise. But under these circumstances I find that it is more indicative of a mistake, albeit a severe one, than of willful disregard.

    Several other factors cut in favor of setting aside the entries of default and allowing Leduc and Alarm Monitoring to defend. First, courts in this circuit recognize a "strong policy of determining cases on their merits" and "therefore view defaults with disfavor." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003). Leduc and Alarm Monitoring have raised credible arguments that at least some of Percival's claims lack merit based on Leduc's claimed long residence in Percival's home and storage of personal items

5

there. *See* Mot. to Vacate at 6-9. Percival even acknowledges that, given her objections to the Magistrate Judge's report and recommendation, Leduc should be permitted to defend on at least one count. *See* Resp. at 5–6. Second, if I declined to set aside the entries of default and instead adopted the Magistrate Judge's report and recommendation over Percival's objection, she would be entitled to almost $10,000 in actual and punitive damages against Leduc. That is a "significant financial loss to the defaulting party." *Compania*, 88 F.3d at 951. Third, although his motion is certainly tardy, Leduc moved quickly once he understood the full import of his mistake, filing a motion and proposed answer the day after he retained counsel. *See* Leduc Aff. ¶ 11; (Doc. 73-2). Leduc has continued to act in that spirit since, *see* (Doc. 81) (filing provisional answer to Percival's second amended complaint), while Percival recently was ordered to show cause why she should not be sanctioned for failure to comply with court orders and to respond to the Sheriff's Office Defendants' discovery requests, *see* (Docs. 80, 88). And although Percival will lose out on a potential default judgment, prejudice is minimal because the suit would not conclude based on a partial default judgment. Indeed, Rule 54 provides that any partial final judgment resolving the claims against Leduc and Alarm Monitoring could ordinarily "be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b).

In sum, Leduc and Alarm Monitoring have demonstrated good cause to set aside the entries of default.

Accordingly, it is **ORDERED**:

1. Leduc and Alarm Monitoring's Motion to Vacate Clerk's Default (Doc. 73) is **GRANTED**. The Clerk is directed to **VACATE** the Entries of Default (Docs. 44–45).

2. Percival's Motion for Entry of Default Judgment (Doc. 48) and Objections (Doc. 71) to the Magistrate Judge's Report and Recommendation are **DENIED as moot**. In the light of the above, the Clerk is directed to **VACATE** the Report and Recommendation (Doc. 66) **as moot**.

3. Leduc's proposed Answer to the Second Amended Complaint (Doc. 81) is accepted as filed.

4. The Parties are directed to meet and confer and file an updated Case Management Report no later than **May 3, 2024**. In the interim, the Case Management Scheduling Order, as amended (Docs. 41, 69), is **VACATED**.

**ORDERED** in Tampa, Florida, on April 17, 2024.

Kathryn Kimball Mizelle
United States District Judge